# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 25, 2013　　　Decided November 19, 2013

No. 11-1066

NATIONAL ASSOCIATION OF REGULATORY UTILITY
COMMISSIONERS,
PETITIONER

v.

UNITED STATES DEPARTMENT OF ENERGY,
RESPONDENT

———

Consolidated with 11-1068

———

On Petitions for Review of Final Actions or
Failures to Act by the United States Department of Energy

———

*Jay E. Silberg* argued the cause for petitioner. With him on the briefs were *Timothy J.V. Walsh*, *James Bradford Ramsay*, *Holly Rachel Smith*, and *Anne W. Cottingham*.

*Joseph A. McGlothlin*, *Cynthia B. Miller*, and *Richard C. Bellak* were on the brief for amici curiae Florida Public Service Commission, et al., in support of petitioners.

*Allison Kidd-Miller*, Senior Trial Counsel, U.S. Department of Justice, argued the cause for respondent. With her on the brief

were *Stuart F. Delery*, Acting Assistant Attorney General, and *Jeanne E. Davidson*, Director.

Before: BROWN, *Circuit Judge*, and SILBERMAN and SENTELLE, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* SILBERMAN.

SILBERMAN, *Senior Circuit Judge*: Petitioners, a group of nuclear power plant operators, appear again before us to claim, essentially, that so long as the government has no viable alternative to Yucca Mountain as a depository for nuclear waste they should not be charged an annual fee to cover the cost of that disposal. We agree.

I.

Last year we decided that the Secretary of Energy had not complied with his statutory obligation to determine annually the adequacy of the fee petitioners pay to the government. *Nat'l Ass'n of Regulatory Util. Comm'rs v. U.S. Dep't of Energy*, 680 F.3d 819 (D.C. Cir. 2012). We rejected the government's argument that the Secretary was not obliged to determine the fee's adequacy unless someone (a "deus ex machina"?) brought to the Secretary evidence that the fee was excessive or inadequate. *Id.* at 824. We held that the Secretary had an affirmative obligation to examine the facts himself and come to a determination as to the adequacy of the fee.

We noted also that the Department of Energy's opinion had abandoned, without explanation, its previous policy of producing sophisticated analyses of potential costs. It had ignored the enormous amount of interest – $1.3 billion – accruing annually in the fund built up by previous assessments,

and it had not excluded costs already paid and costs associated with the disposition of defense-related waste for which the generators are not responsible. And we thought that using Yucca Mountain's depository cost as a proxy was unreasonable because the government had abandoned that program. But the key defect in the government's position was its failure to make the statutorily required determination as to whether the fee was adequate. We remanded to the Secretary with instructions to conduct a new fee assessment within six months; the panel retained jurisdiction to expedite any further review.

## II.

On remand the Department has again declined to reach the statutorily required determination. Instead, we are presented with an opinion of the Secretary that sets forth an enormous range of possible costs. According to the Secretary, the final balance of the fund to be used to pay the costs of disposal could be somewhere between a $2 trillion deficit and a $4.9 trillion surplus. This range is so large as to be absolutely useless as an analytical technique to be employed to determine – as the Secretary is obligated to do – the adequacy of the annual fees paid by petitioners, which would appear to be its purpose. (This presentation reminds us of the lawyer's song in the musical, "Chicago," – "Give them the old razzle dazzle.") Thus, the Secretary claims that the range is so great he cannot determine whether the fees are inadequate or excessive, which is essentially the same position we rejected only last year as in derogation of his responsibility under the statute. The Secretary may not comply with his statutory obligation by "concluding" that a conclusion is impossible. *See Pub. Citizen v. Fed. Motor Carrier Safety*, 374 F.3d 1209, 1221 (D.C. Cir. 2004) ("[R]egulation would be at an end if uncertainty alone were an excuse to ignore a congressional command to 'deal with' a

particular regulatory issue."); *Consolidated Edison Co. of N.Y., v. U.S. Dep't of Energy*, 870 F.2d 694, 698 (D.C. Cir. 1989).

The Secretary's position – his "non determination" – is purportedly predicated on a Departmental report issued in 2011 termed a "Strategy for the Management and Disposal of Used Nuclear Fuel and High-Level Radioactive Waste." Even if that so-called strategy led to a statutorily required determination, it would still be problematic because, as petitioners point out, the strategy is based on assumptions directly contrary to law.

Most glaring is the conflict between the statutory requirement that sites other than Yucca Mountain cannot even be considered as an alternative to Yucca Mountain, 42 U.S.C. § 10172, and the "strategy's" assumption that whatever site is chosen, it will *not* be Yucca Mountain. The other conflicts are related to this prime conflict. The "strategy" suggests that a temporary storage facility might be operational by 2025 and that the temporary facility could be constructed *without* NRC first issuing a license for the construction of a permanent facility. But the statute requires that precondition. The statute is obviously designed to prevent the Department from delaying the construction of Yucca Mountain as the permanent facility while using temporary facilities. 42 U.S.C. § 10168(d)(1). Finally – and this is quite revealing – the strategy assumes that the Department would be required to obtain the consent of the jurisdiction where the permanent depository is to be sited. That is, of course, reflective of the political considerations the Department faces but, unfortunately, it is directly contrary to the statute, which explicitly allows Congress to override a host state's disapproval. 42 U.S.C. § 10135; *accord In re Aiken Cnty.*, 725 F.3d 255, 260 (D.C. Cir. 2013) ("[A]n agency may not rely on political guesswork about future congressional appropriations as a basis for violating existing legal mandates."). Finally, the strategy projects completion of a permanent

depository (located somewhere) not until 2048, in contrast to the statute, which directed completion by 1998. 42 U.S.C. § 10222(a)(5)(B). That is truly "pie in the sky."

In response to petitioners' argument – that a position predicated on a policy that so palpably rejects current law cannot be in accordance with the Secretary's obligation, even if it does lead to a specific determination – the government responds that some of the Secretary's previous determinations had also assumed statutory changes. That is so, but even assuming those prior determinations were legal, it is one thing to anticipate minor statutory additions to fill gaps, and quite another to proceed on the premise of a wholesale reversal of a statutory scheme. The latter is flatly unreasonable.

The government claims it is put in a catch-22 position because our prior opinion said it was unreasonable for the Department to use Yucca Mountain as a proxy to estimate disposal costs, and petitioners now argue that the government cannot assume a hypothetical non-Yucca Mountain depository. But the government's problem is of its own making. It certainly could have used Yucca Mountain's costs if it were still pursuing that site, but it cannot have it both ways. It cannot renounce Yucca Mountain and then reasonably use its costs as a proxy. The government was hoist on its own petard. And it does not follow that the corollary to our previous opinion is that the government can now use non-Yucca Mountain assumptions that are contrary to the statutory scheme.

In our last opinion we noted accounting defects in the Secretary's prior determination that have now been remedied. Specifically, the Department now takes into account the interest accruing on the enormous sums that have already been paid. The Department deducts costs already expended and excludes costs for disposal of defense-related waste for which petitioners are

not responsible. But these are truly peripheral issues; the key defect in the government's position is that the Secretary still declines to carry out his basic statutory obligation.

\* \* \* \*

The government asks us, if we conclude the Department's latest position is contrary to law, to, once again, remand rather than order the Secretary to suspend the fee. But the Secretary's position is so obviously disingenuous that we have no confidence that another remand would serve any purpose. As we noted, we are not unaware of the political dilemma in which the Department is placed. But until the Department comes to some conclusion as to how nuclear wastes are to be deposited permanently,[1] it seems quite unfair to force petitioners to pay fees for a hypothetical option, the costs of which might well – the government apparently has no idea – be already covered.

To be sure, as the government contends, if the present fee is suspended, that could mean that the costs of nuclear waste disposal would be transferred to future rate payers. But that possibility is inherent in the statutory scheme which obliges the Secretary to make the annual fee determination. "Intergenerational equity" is implicated any time the fee is adjusted.

Finally, the government argues that we should not order the fee set to zero because petitioners are already being compensated for the government's breach of its statutory and contractual duty to dispose of existing waste, through breach of contract suits in the Court of Federal Claims. The generators are

---

[1] It may be that the Secretary simply cannot imagine any permanent depository other than Yucca Mountain, but if that is true the implications are obvious.

currently storing their waste at the generation facilities, and the government is compensating them for the cost of this storage. But the government's failure to dispose of prior wastes on schedule is not the legal wrong that we are remedying, and we do not base our decision on principles of contract. The issue here, rather, is the government's failure to conduct an adequate present fee assessment, as required by the statute. Our ruling here does not provide petitioners with any form of compensation, nor does it relieve them of their obligation to *ultimately* pay for the cost of their waste disposal. When the Secretary is again able to conduct a sufficient assessment, either because the Yucca Mountain project is revived, or because Congress enacts an alternative plan, then payments will resume (assuming that some future determination concludes that further fees are necessary).

### III.

Because the Secretary is apparently unable to conduct a legally adequate fee assessment, the Secretary is ordered to submit to Congress a proposal to change the fee to zero until such a time as either the Secretary chooses to comply with the Act as it is currently written, or until Congress enacts an alternative waste management plan.

*So ordered.*